AO 91 (Rev. 11/11)  Criminal Complaint

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

JUL 3 0 2018

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| JOSE RAMIREZ | ) Case No. 18mj2472 | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 26-27, 2018__ in the county of __Sandoval and Bernalillo__ in the _____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1201(a)(1) | - Kidnapping, |
| 18 U.S.C. § 2119 | - Carjacking, |
| 18 U.S.C. § 1951 | - Interference with Commerce by Threats or Violence (Hobbs Act), |
| 18 U.S.C. § 371 | - Conspiracy, and |
| 18 U.S.C. § 2 | - Aiding and Abetting. |

This criminal complaint is based on these facts:

Refer to the attached 10-page affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Bryan Acee, FBI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 07/27/2018

_____
Judge's signature

City and state: Albuquerque, New Mexico

Steven C. Yarbrough, U.S. Magistrate Judge
Printed name and title

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

I, Bryan Acee, being duly sworn, depose and say:

**INTRODUCTION**

1. I have been a law enforcement officer for approximately 18 years and am employed as a Special Agent with the Federal Bureau of Investigation (FBI). I am assigned to the FBI Albuquerque Field Office, Violent Crime Major Offender (VCMO) squad, where I primarily investigate violent repeat offenders, armed robberies, kidnappings, and FBI fugitives. Prior to my assignment to the VCMO squad, I served on the FBI Safe Streets Gang Task Force in Albuquerque, New Mexico, and the FBI/DEA Cross Border Drug Violence Squad in Las Cruces, New Mexico. I was a police officer and detective before joining the FBI.

2. This affidavit is based on information obtained from victim D.M. and FBI Special Agents who have helped me in this investigation. This affidavit does not set forth all of my knowledge or summarize all of the investigative efforts in this investigation. This affidavit is being submitted in support of a criminal complaint and arrest warrant charging JOSE RAMIREZ with the following violations of the United States Code:

    a. 18 U.S.C. § 1201(a)(1) Kidnapping,

    b. 18 U.S.C. § 2119 Carjacking,

    c. 18 U.S.C. § 1951 Interference with Commerce by Threats or Violence (Hobbs Act),

    d. 18 U.S.C. § 371 Conspiracy, and

    e. 18 U.S.C. § 2 Aiding and Abetting.

Page | 1

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**
**AND ARREST WARRANT**

**PROBABLE CAUSE**

3. On July 26, 2018, at approximately 6:00 a.m., a 69-year-old male victim, D.M., a resident of Placitas, New Mexico, exited his residence through his garage and prepared to travel to work in his red 2004 Ford Ranger. D.M. is the owner of a business that has locations in Albuquerque and Santa Fe, New Mexico.

4. As D.M. entered his vehicle, an unknown male subject (SUBJECT 1) wrapped his armed around D.M.'s neck and covered D.M.'s mouth. D.M. started to struggle with SUBJECT 1 and observed a second male (SUBJECT 2) approach with a firearm in his hand. D.M. observed both SUBJECTS to have stocking caps on their heads and blue bandanas over their faces. While D.M. struggled to break free of SUBJECT 1's grip, SUBJECT 2 approached and struck D.M. in the face several times with a pistol. During the struggle, D.M. realized a stub-nosed revolver had fallen to the ground and D.M. was able to retrieve the firearm. D.M. pointed the gun at one of the SUBJECTS and pulled the trigger several times; however, the revolver did not fire. D.M. then realized the other SUBJECT was armed with a semi-automatic pistol and fearing that he might be shot, D.M. stopped fighting and complied with the SUBJECTS. The SUBJECTS forced D.M. into the middle seat of his Ford Ranger and placed a shirt over his head to obstruct his vision. D.M. was seated between the two SUBJECTS and all three men departed the residence.[1]

---

[1] FBI Special Agents who reviewed surveillance video footage from a neighborhood camera told me the red Ford Ranger can be seen departing D.M.'s residence in the morning; however, it appeared only one person was inside the truck.

Page | 2

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

5.  D.M. indicated the SUBJECTS knew him by his first name and they told D.M. they knew him to have two safes[2] and the SUBJECTS believed him to have a significant amount of money in the bank. The SUBJECTS demanded D.M. pay them $50,000. D.M. convinced the SUBJECTS that he did not have $50,000, but could come up with $10,000. The SUBJECTS took D.M.'s cell phone and wallet. They removed $600 from D.M.'s wallet.

6.  After departing the residence, the SUBJECTS drove north on I-25 for several miles and stopped at a remote location. The SUBJECTS tied D.M.'s hands and feet with tie-downs and placed him in the bed of his Ford Ranger. The SUBJECTS removed items from the bed of the truck to create room for D.M.[3] The SUBJECTS made D.M. lay down in the bed of the truck and covered his body with carpet and other items. The SUBJECTS then drove D.M. around for some time. While being driven around, D.M. was able to see under or through an opening in his face covering and caught a glimpse of a restaurant sign in Bernalillo, New Mexico, that D.M. was familiar with. D.M. later observed a Loves Travel Stop and Burger King restaurant, which were co-located together. I believe the Loves/Burger King to be located on Central Avenue SW and Atrisco Vista Boulevard (just south of Interstate 40). The trio arrived at an unknown location shortly thereafter and D.M was placed in a shed-like structure, on a couch. D.M. remained blind-folded, but heard SUBJECT 1

---

[2] D.M. confirmed with FBI Special Agents that he did possess two storage safes.
[3] FBI Special Agents subsequently recovered the items removed from D.M.'s truck. The recovery was made possible once agents began tracking the TARGET TELEPHONE.

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

and SUBJECT 2 interact with two females. D.M. described all of the people as speaking Spanish.

7. D.M. was able to loosen his blindfold over time and observed the SUBJECTS cover his Ford Ranger with a gray car cover, and place a piece of wood over the tarp to keep it in place.

8. The SUBJECTS had D.M. call his daughter, J.L., and provided D.M. with instructions on where to wire transfer $9,400 ($10,000-$600). The funds were to be sent to a specific account at a bank in Guadalajara, Mexico. D.M. called J.L. several times regarding the wire transfer, as the bank routing information was not sufficient to complete the transfer. During one of the conversations, J.L. spoke with one of the SUBJECTS about the pending wire transfer. The SUBJECT informed J.L. that "$30,000 can be deposited in that account no problem" and questioned why J.L was having problems sending $10,000. J.L. explained the bank required additional information because the transfer was being sent international. The SUBJECT suggested J.L. just get cash and they could meet in the downtown Albuquerque area. J.L was able to record a total of four calls with D.M. and the SUBJECT. I have reviewed those recordings.

9. The FBI obtained call detail records for J.L.'s cell phone and determined the SUBJECTS' telephone number to be XXX-XXX-4555[4] (TARGET TELEPHONE). I have confirmed the TARGET TELEPHONE to have service with T-Mobile US, Inc. The subscriber on the account was listed as JOSE

---

[4] The full telephone number is known to me; however, I have redacted it because full disclosure would directly impact our investigation and the apprehension of the SUBJECTS.

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

RAMIREZ, with the address 10317 Jenaro Street SW, Albuquerque, New Mexico (LOCATION 1). T-Mobile's records indicated RAMIREZ activated the account on July 3, 2018.

10.  A review of FBI databases indicated RAMIREZ was on active parole with the New Mexico Corrections Department (NMCD) for a conviction of aggravated battery against a household member and being a felon in possession of a firearm. RAMIREZ' criminal history (FBI #199073FB8) indicated he had prior federal convictions for 8 U.S.C. § 1324 - alien smuggling (1999) and 21 U.S.C. § 841(A)(1) -possession with intent to distribute marijuana (2001). RAMIREZ' records also reflect a felony conviction for forgery in Arizona (1997).

11.  RAMIREZ' residence of record with NMCD was listed as 10301 Jenaro Street SW, Albuquerque, New Mexico (LOCATION 2).

12.  During the evening hours of July 26, 2018, I spoke with RAMIREZ' NMCD parole officer, Rebekah Wells, who provided me with additional information on RAMIREZ. I learned RAMIREZ was required to wear a GPS ankle monitoring device as a condition of his parole. Officer Wells told me RAMIREZ cut the device off on the evening of July 25, 2018 and NMCD officers recovered the damaged GPS device at LOCATION 2 on the morning of July 26, 2018. NMCD then issued an arrest warrant for RAMIREZ for parole violations, which remains active as of the submission of this complaint.

13.  I asked Officer Wells to listen to the telephone call J.L had with one of the SUBJECTS earlier in the day. After listening to the

call, Officer Wells informed me the SUBJECT sounded like RAMIREZ and she was 80-90% sure the SUBJECT was RAMIREZ.

14.  Officer Wells provided me with RAMIREZ' telephone number, which was the same as the TARGET TELEPHONE. Officer Wells sent me a recent voicemail from RAMIREZ to Officer Wells, in which RAMIREZ indicated he was going to be out past his curfew and indicated he was at 2nd and Rio Bravo, in Albuquerque. RAMIREZ asked Officer Wells to call him back on the TARGET TELEPHONE.

15.  After listening to the voicemail, I too believe the SUBJECT and RAMIREZ to be the same person, based on similarities in their voices, accent, and speech pattern. I also noted both men spoke with an apparent stutter. Officer Wells told me RAMIREZ often stuttered when speaking with her.

### Victim Located

16.  At approximately 10:45 p.m., D.M. was dropped off near the train tracks at Rio Bravo SW and 2nd Street SW, in Albuquerque, New Mexico. D.M. removed a shirt that had been placed over his head and walked to the nearby Giant gas station, located at 201 Rio Bravo Boulevard SW, Albuquerque, New Mexico. Store clerks at the Giant called 911 and the Bernalillo County Sheriff's Office and paramedics responded to the location.

17.  I arrived at the location a few minutes later and briefly spoke with D.M., who was in the back of an ambulance. D.M.'s face and clothing were covered in blood. D.M. was transported to an Albuquerque hospital and provided with medical treatment.

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

18. FBI Special Agents Ross Zuercher, Thad Clancy, and I met D.M. and his family members at the hospital. D.M. provided a detailed statement to SAs Zuercher and Clancy. D.M. was shown a photo array that included RAMIREZ; however, D.M. did not initially recognize RAMIREZ. While viewing the photos (one at a time) D.M. used his hands to mask, or cover-up, the majority of the photo – only exposing the area around the person's eyes. D.M. did not recognize any of the people in the photo array. Agents later asked D.M. if he knew anyone named JOSE RAMIREZ. D.M. said he had a former employee named JOSE RAMIREZ, who had worked for him for about four years before D.M. subsequently fired RAMIREZ for theft. SA Zuercher showed D.M. a photo of RAMIREZ and D.M. immediately recognized the person in the photo as being the same RAMIREZ who had previously worked for him. D.M. told agents one of the SUBJECTS (the taller of the two) was built like RAMIREZ and his voice sounded like RAMIREZ. RAMIREZ had worked for D.M. approximately nine years prior.

19. While SAs Zuercher and Clancy continued their interview of D.M., myself and other FBI agents met with NMCD fugitive investigators and formulated a plan to visit LOCATIONS 1 and 2 in an attempt to locate and arrest RAMIREZ on his state parole warrant.

20. FBI and NMCD fugitive investigators made contact with RAMIREZ' family members at LOCATIONS 1 and 2. RAMIREZ' family members were cooperative, but unable to provide investigators with any meaningful leads on RAMIREZ' whereabouts. FBI agents assisted NMCD officers in searching the locations; however, RAMIREZ was not located.

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**
**AND ARREST WARRANT**

**The Criminal Charges**

21. <u>Kidnapping</u>: 18 U.S.C. § 1201(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—

> (1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

22. <u>Carjacking</u>: 18 U.S.C. § 2119 – Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so

23. <u>Interference with Commerce by Threats or Violence (Hobbs Act)</u>: 18 U.S.C. § 1951 – (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section

24. <u>Conspiracy</u>: 18 U.S.C. § 371 – two or more persons conspire either to commit any offense against the United States, or to defraud

the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy

25. <u>Aiding and Abetting</u>: 18 U.S.C. § 2 – (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

**Interstate Nexus**

26. The SUBJECTS attempted to have D.M.'s family send money from New Mexico to Guadalajara, Mexico, via an international wire transfer.

27. The SUBJECTS utilized the TARGET TELEPHONE (a cellular telephone with service provided by T-Mobile US, Inc.) during the kidnapping of D.M. The SUBJECTS called J.L. with the TARGET TELEPHONE. I am aware T-Mobile US, Inc. is headquartered in Bellevue, Washington. I am also aware that cellular telephones, such as the TARGET TELEPHONE, engage in interstate activities by sending cellular and GPS search signals to communications equipment located around the United States to locate the cellular telephone.

28. D.M. is the owner of a business located in Albuquerque and Santa Fe, New Mexico. I am aware the business ships and receives goods from outside the District of New Mexico and provides services to consumers in other states. I am also aware the kidnapping of D.M. resulted in his inability to open his Albuquerque business on July 26, 2018, and

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

his employees were unable to acquire some of the equipment needed to complete their scheduled jobs. I have also learned that J.L is responsible for processing the payroll for all of D.M.'s numerous employees and J.L. was unable to process the payroll through various national banking institutions (Bank of America, Wells Fargo, U.S. Bank, etc.) on July 26, 2018.

29.   I am aware Ford Ranger vehicles are not manufactured in New Mexico.

## CONCLUSION

30.   Based on the aforementioned information, I believe JOSE RAMIREZ committed the following violations within the District of New Mexico: 8 U.S.C. § 1201(a)(1) Kidnapping, 18 U.S.C. § 2119 Carjacking, 18 U.S.C. § 1951 Interference with Commerce by Threats or Violence (Hobbs Act), 18 U.S.C. § 371 Conspiracy, and 18 U.S.C. § 2 Aiding and Abetting.

Respectfully submitted,

_____
Bryan Acee
Special Agent
Federal Bureau Investigation

SUBSCRIBED AND SWORN TO BEFORE ME ON JULY 27th, 2018:

_____
HONORABLE STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO